Good morning, Your Honors. May it please the Court, Holly Sullivan on behalf of Mr. Rangel-Guzman. Prosecutors are allowed to strike hard blows, but they're not allowed to strike foul ones. Here, the prosecutor introduced facts not in evidence, violated the advocate's witness rule, and engaged in improper vouching by acting as a witness during the cross-examination of Mr. Rangel-Guzman. However, unlike Mr. Rangel, she was not allowed to be cross-examined. This was misconduct, and it requires reversal. Nobody objected, right? There were objections to some of the questions. However, the – Not on this basis, right? Not on this basis. So it would be a plain error? Under – I believe under either standard, whether the Court finds that the objections were on the proper basis or not, under either standard, under either harmless error review or under plain error review, that standard has been met here. Did you hear my question? I did, Your Honor. I – there were objections that were made. I'm asking you, were – were reviews of plain error? I – I believe that the objections – You don't think it makes a difference, but I'm asking you what – if you – you know, with a standard, right? There's an answer to this. You either agree it's plain error or you don't agree. If you don't agree, you have to explain to me why. There were times that objections were made to being – On the basis of vouching? Or presumptuous conduct? The only time that a vouching objection was made was during closing. During cross-examination, there were objections that were made as to being argumentative speculation and hearsay. That's not the argument you're making now. Correct. Vouching as to – So the vouching objection to this series of questions was not made? A vouching objection was not made during cross-examination. So plain error review applies to that? To those line questions. That's all the Chief Judge is trying to extract at this point? Yes. Okay. Now, the – the problem here and the problem why it matters is that the prosecutor repeatedly attempted to impeach Mr. Rangel's testimony on numerous bases, but the one most – I mean, he – he mostly confirmed what the – he mostly answered yes to those questions. So insofar as the vouching consists of the prosecutor testifying as to what happened, your client agreed mostly. So all those things may have been wrong. If it was wrong, it wasn't objected to. But in any event, I can't see where there's any damage from anything he agreed to in terms of the content of the earlier conversation, right? Well, I do think there was damage. There were numerous times that he didn't agree and that he denied. And when he – And many of those times he ultimately did agree. I mean, which specific points by the end of the testimony did he disagree? Where – where were there inconsistencies? The inconsistencies were at excerpt of record 62 to 63, and that was right out of the gate. When she began saying, last week you told us that you and your mother ran into Martha at a market about four to five months before you were arrested. Do you remember that? And he denied that. He said, that's incorrect. Again, she said, you told us that four to five months before you got arrested, that's when you and your mother ran into Martha. It was just my mother. You're saying that you weren't with your mother at the market. No. So now your testimony is that your mother ran into Martha at the market four to five months before you got arrested on September 5th. Right. Again, that – And how is that significant? Well, it's – I mean, it's – plain air review, it's your client's obligation to demonstrate the prejudice that would have resulted. How is that particular fact prejudicial? It's significant. That fact and others. There are other times – Well, I'm going to ask you to go through that. Because I looked. I only found two. That's one of them. There's another. I didn't find others where in the end the prosecutor's, quote, testimony and your client's testimony were different. It's significant because when a defendant is testifying, and the – this is a close case. It wasn't a case with a wiretap. It wasn't a case with overwhelming evidence. This is a denied knowledge case where the witness is – Your client's story didn't kind of scream out credibility on its face. Your client's – But that's – but, of course, what that indicates is that credibility was the key issue is what you're saying, yes? Credibility is exactly the key issue. And when the prosecutor says – contradicts some of the things your client says, either initially or even in some cases ultimately, and says you lied and you told me something different and I was shocked by what you said at certain times, she is expressing unequivocally her view of his credibility. True? True. And that's the main problem here is when the credibility of a witness is crucial, and there cannot be a more crucial credibility than a defendant testifying on his own behalf at a trial,  It's misconduct to have a prosecutor express doubts about a defendant's credibility. Don't prosecutors do this all the time, saying, you know, he got on the stand, he told us a tale, ladies and gentlemen of the jury, don't believe him, you know? Isn't that what prosecutors do? That's – I think that's very different. There's a very big difference between – I'm sorry, you agree that that's what prosecutors do, but it's different. I agree prosecutors do that. So what's wrong with a prosecutor saying, you know, I'm letting the jury know I don't believe a word this man is saying? It's all a tissue of lies. What a prosecutor can do is a prosecutor can stand up and say the defendant said X, Y, and Z, and this evidence shows that that isn't true or that that's not credible or that you shouldn't believe that. The prosecutor can certainly attack the credibility of any witness, including the defendant. The prosecutor can't give their own personal opinion where they are putting – not only vouching for the accuracy of that statement, putting the government behind the accuracy of that statement. Well, isn't it more than that? For example, the prosecutor said during cross-examination, not on summation or any other time, but on cross-examination, quote, Don't you, the defendant, remember that I, the prosecutor, was shocked that you were saying it was four to five months before you got arrested? So she is making an assertion there of not only what happened, but indeed of her own state of mind at the time that he allegedly could infer, and yet she cannot be cross-examined in any way, shape, or form about that statement. Isn't that the kind of thing you're complaining about? That's entirely what I'm complaining about. It's her personal assertion of some type of knowledge outside of the evidence that's being presented at trial. In every question that she went through that I complained of, in every question on cross-examination, Why was there no objection then? At that point, the district court could have given a curative instruction or told the prosecutor to cut it out? The district court did say at... There's no objection. There's no objection. That's correct. And the district court did at one point say, When you are saying, didn't I say that she is making herself a witness by making a personal observation or inserting herself as a witness? So even then, there's no objection. The issue is raised by the court, and the defense lawyer, for whatever reason, chooses not to raise it. You know, it sounds like a strategic decision to me. It's not as... The judge actually points this out. The defense counsel says, decides to make no objection. I understand. But even under looking at plain error, it seriously affected the fairness of these proceedings. So how do we know? I mean, that's what I'm struggling with. I don't have any problem, frankly, with your case that the prosecutor didn't properly put the questions. But I can't tell on plain error review how it made a difference. He wound up admitting several of the inconsistencies. There was an agent who presumably could have testified. The facts were there was a clear difference in the end. One of them you described, whether it was just him or him and his mother. None of them went to the heart of the... I understood the allegations. And so why should we think that even accepting that this was error, why should we conclude it had such a prejudicial impact? Well, it did have a prejudicial impact. And the problem with it is that even when there were attempts made to try and show that Mr. Rangel's testimony was correct, and that when he was denying that things were said, that that was correct, that they were never said, Mr. Lerman... Looking at his whole story, I mean, it's the kind of story that I can't imagine a jury would believe regardless. I mean, you know, the story about going to an aunt he hadn't met and getting a car and leaving it with a cousin and then going to the beach in a taxi and coming back from a taxi. I mean, it's all sort of engineered to sort of have this carved there for a while with this unknown person with a stash of drugs. I mean, forget about any of this other stuff. It just doesn't sound to me like the kind of story that a jury would buy regardless. A few things with that. One is that the jury didn't come back ten minutes later with a guilty verdict. The jury deliberated for essentially the amount of time that the trial lasted for it. So the jury was certainly considering something during that amount of time. Additionally, that's the question for the jury to be making, the credibility determination for them to be making. Well, but the question is how would that have made a difference? What we need to look at is what the trial would have looked like without having those assertions entered into it. And this is a case where there was a young man without any criminal record who was driving a car with a registered owner that has a warrant and is a fugitive for drug trafficking that wasn't showing any signs or any physical indicators that would have brought him into secondary inspection. He had a minor girlfriend friend passenger in the passenger seat. And only after a complete removal of the car, removing through the compartment and a dog alert was there marijuana found within that car. There were two times that he was questioned by the same agent. There was no confession given, no statements that were given. And based on the absence of evidence of guilt, there was a third meeting that was conducted a week before trial in which the prosecutor determined whether or not they were even going to proceed with trial. So the prosecutors, the agents, no one believed that there was sufficient evidence of or overwhelming evidence of guilt at that time. And so when a judge comes in and tells a cock and bull story, clients will do that. They take a closed case and they kick it out of the park by telling this, trying to fool the jury with a story that makes no sense at all. Didn't he basically sink his own boat? Those statements were the same statements that everyone had relied on up until that point, up until a week before trial. It's one thing to make statements like that and have them reported by others. It's another thing to get on the stand and look at the jury and tell the story, which frankly it's... This is a question of credibility, totally one for the jury, as to which this Court should have only the most modest interference. What we might think is a cock and bull story, the jury might find is the truth. Isn't that what the jury's role is all about when it comes to credibility? It is, and more importantly, the prosecutor's view of what the evidence is. In that case, shouldn't we defer to the jury's finding, what the jury found against him? I mean, if we were going to have that great deference to the jury, the correct answer is affirm, right? Unless they were influenced by a prosecutor repeatedly putting her credibility on the line without being subject to cross-examination. And that's the problem. That's right, and that's what you have to persuade us of. That's the problem. The problem is that without the prosecutor inserting her personal views of what the evidence was, what Mr. Rangel's statements were at any particular time, and actually explaining to the jury what she believed the evidence was, giving the statements, not coming through any... We understand your argument, and that's what you say, but we can't really judge that without looking at what the evidence was, including his cock and bull story. You can't just say, well, you know, you just can't look at whether it was cock and bull or not. There's no other way to judge whether or not this made any difference. Right? I understand the Court's statement. I disagree with you. I don't believe that the story is a cock and bull story that would be a difficult story to believe or for a jury to accept. It's certainly... There are cases that have much more difficult factual scenarios. Stranger things have happened. Much more difficult factual scenarios that have been not guilty verdicts. And in going through that again, the jury is to make the credibility determination, and they don't make that determination with the prosecutor's hand pushing down the scale. Okay. Thank you. Good morning. Kyle Hoffman from the United States. I'd like to take up a comment that my closing counsel made in her argument and run with it. And that's that we have to look at the trial without these assertions. I would suggest that if you look at the trial, because we're on plain error review, if this, just putting aside for whether it's error or not, if we look at the trial without those assertions, would it have mattered? Had they met their burden of showing it would have mattered? I would say emphatically not. So is it not the case that this case turned very substantially on credibility? Here's the unusual case where the defendant takes a stand. He tells a... The key determination they have to make is whether he's lying or telling the truth. The whole case turns on that. Isn't that true? I don't disagree that it's a credibility issue. And then the prosecutor not once but repeatedly puts in evidence her belief that he's lying and not telling the truth by reciting facts that she claims she knows that he should know. You don't agree that her questions were proper, do you? You're not asserting that her questions were proper, are you? Your Honor, I would say that you would need to... Are you asserting that her questions are proper, yes or no? As a blanket? No, the ones that are challenged in this appeal. I don't agree that every single one of them were improper. Do you think it was proper for her to say, don't you remember that I was shocked that you were saying it was four or five months before you got arrested? Do you think that was a proper question? Yes or no, please. I don't agree that it was improper. We know you don't want to throw your colleague under the bus. And that's the problem. But I've got to tell you, this is so far over the line that you might as well wave the right flag on that. Here's what I would suggest on that. I'm not going to stand before Your Honor and say that that was perfect cross-exam technique. I can't. Is there any training in your office about this kind of thing? Yes, Your Honor. And aren't prosecutors told not to put their credibility in this issue? Yes. So when, for example, she said in another instance where she disagreed with his answer and she said, quote, this is the first time that you know that I'm hearing about this, right? That was objected to and the objection was sustained. Yeah. Was that a proper question? I don't think it was, actually. All right. But that's the point. What I'm trying to suggest to Your Honor is that when you have a whole series of things that now on appeal are claimed to be improper and you ask counsel, well, are you saying they're proper or not? I would suggest that it needs to be parsed. But even more generally than that, if the burden is to show that it would have made a difference in the end, we don't have to parse it. Well, I agree that there's a, you know, this is the office that gave us Maloney and that gave us Leal del Carmen, and we have had questions in the past, and you can go back and listen to the arguments in those cases, they're somewhat famous, about whether or not the U.S. Attorney's Office in the Southern District of California is engaging in proper training of its assistants. It comes up again and again and again. Now, you know for a fact that the way to have conducted this cross-examination would have been to ask the defendant questions, and if there were contradictions, the way to have done it is to put the agent on the stand, who was a third party that was present there, and ask the agent to contradict whatever it is that the government thought the defendant misstated. That's a proper way to have done it, rather than interjecting counsel's own views and counsel's own presence at the meeting. The jury should not even have known that the assistant U.S. attorney was present at the meeting. And you're sitting here, no, listen to me, I'm talking. You're not going to persuade us of anything here until we have some sort of acknowledgement that this is not proper, this was not properly conducted, and that you're going to go back and talk to your boss, the U.S. attorney, and have her listen to the tape of this argument, to the audio, and take some action to make sure that this kind of thing doesn't happen again. And that the assistant in question who did this is told in no uncertain terms that this was improper conduct. Now, do you understand this? I do, Your Honor. Okay. And you're going to do this? Of course. Okay, so we start with the premise that what happened here was improper, and that the assistant U.S. attorney will be so told by her bosses, including the U.S. attorney, and you will ask the U.S. attorney to take steps to prevent further incidents like this in our office by a proper training program to avoid incidents like this, and Maloney, and Leal del Carmen, and other series of cases coming out of the Southern District that gives us a great deal of pause about what's going on down there. Understood, Your Honor. Okay, now you can take it from here. Now, start with the premise that what happened here was wrong, and then dig yourself out of that hole. The burden is on the defendant to show that the outcome would have been, there's a reasonable probability the outcome would have been different absent the error. That was the point I, what it would have looked at, what the trial would have looked like without these assertions, and the prior inconsistent statements and the battle about them. Okay, the trial would have looked like this. The defendant got on the stand and told what Your Honor has expressed some doubts about, a lengthy story which seems implausible on its face, but that's not all. The story was I went down to Tecate with my aunt's car, who I borrowed it just after one meeting, and left it with Daniel, then we took a cab down to Ensenada. Okay? Two people testified about that story. One was the girlfriend, Yoselin Torres, and she admitted that when she was arrested, she told a completely different story about what happened. No mention of Daniel, no mention of a taxi, we took this car down to Ensenada and parked it ten minutes from the beach. That's part one. Part two, Daniel, supposedly at the wedding the day before, Daniel supposedly left the car at his house in Tecate in Mexico. He's called on rebuttal. What does he say? Do you know Kevin Rangel? No. Have you ever seen him before? No. Have you been in Mexico in the last three or four years? No. Okay. And the prosecutor, who the court has expressed some concern about, the end of her closing was, those things can't be gotten around. Those two points. So that's without any of the battle about the prior inconsistent statements, any of the impropriety. You don't think the assistant U.S. attorney making statements, the one that Judge Rakoff quoted to you, there in front of the jury, is so impugning his credibility that any chance he might have had to have the jury believe him was undermined, fatally undermined? I think his credibility was shot with the story, and it was shot with Jocelyn Torres, and her statements on arrest, and it was shot with Daniel Ariza. When he walked in, do you know, is any of this true? No, no, no, no, and no. And that was it. So why couldn't the AUSA arrest for that? Why did she have to go step into it? It's a question I'm afraid I'm unequipped to answer. So bottom line, the story, the issue about whether this mattered in terms of credibility, I would suggest not. On plain error review, there's just no way. And I understand the court's directions clear as a bell. Thank you.
judges: Rakoff, Kozinski, Clifton